IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| SPH AMERICA, LLC,<br>a Virginia company,<br><br>   Plaintiff,<br><br>   v.<br><br>FOLEY & LARDNER LLP,<br>a Wisconsin partnership,<br><br>   Defendant. | Civil Action No. 1:09-cv-945 LMB/JFA |

**PLAINTIFF'S BRIEF IN RESPONSE TO COURT'S ORDER TO SHOW CAUSE**

Plaintiff SPH America, LLC ("SPH America") respectfully submits this brief in response to this Court's order dated September 29, 2009 ("the Order"). In the Order, Your Honor expressed concerns that SPH America may be "filing vexatious lawsuits" and "does not have the intention or ability to purse the merits of its claims." To address those concerns, SPH America provides in this brief a detailed history of its past and pending lawsuits in this Court. Of the five civil actions filed by SPH America identified by docket number in the Order (Order, at 2, n. 2):

- One (No. 1:08-cv-702) resulted in a favorable settlement for SPH America with one of the three defendant groups, after which the case was transferred to another court;

- One (No. 2:09-cv-276) was dismissed pursuant to a comprehensive standstill agreement between SPH America and Kyocera;

- One (No. 1:09-cv-701) was subsumed under a more comprehensive complaint, which was filed less than two weeks later and is still pending; and

- Two (No. 1:09-cv-740 and No. 1:09-cv-776) are pending, and still in early stages.

This brief will assure the Court that SPH America is not engaged in filing vexatious lawsuits, and that it stands ready, as it always has been, to pursue the merits of its claims before this Court. Thus, SPH America respectfully requests the Court to allow it to dismiss its complaint against defendant Foley & Lardner, LLP ("Foley") without prejudice.

**I.      SPH America's Patent Infringement Actions in the Eastern District of Virginia**

Since being founded by Dr. Choongsoo Park in January 2007, SPH America has researched and acquired valuable patent rights in the field of wireless communications. In connection with its active licensing program, SPH America has litigated its patent infringement claims in the Eastern District of Virginia, where its office and employees are based. In particular, SPH America has sought to enforce its rights in two separate litigations over two of its patent portfolios covering distinct areas of technology.

**A.      CDMA Litigation**

SPH America has an exclusive license to patents relating to certain up-link modulation technology covering the W-CDMA and CDMA2000 standards ("the CDMA Patents"), which are implemented by all third-generation ("3G") wireless communication devices. The CDMA Patents were originally issued to South Korea's Electronics and Telecommunications Research Institute ("ETRI"), a world-renown research center that employs over 1,600 scientists and has been granted more than 15,000 patents worldwide. The CDMA Patents that SPH America has asserted in the Eastern District of Virginia are United States Patent Nos. RE 40,385 ("the '385 patent"), 5,960,029 ("the '029 patent"), RE 40,253 ("the '253 patent"), 7,443,906 ("the '906 patent") and 7,586,973 ("the '973 patent").

On July 9, 2008, SPH America filed a complaint in the Eastern District of Virginia against High Tech Computer Corporation, HTC America, Inc. (collectively "HTC defendants");

Sony Ericsson Mobile Communications (USA), Inc., Sony Ericsson Mobile Communications AB (collectively "Sony Ericsson defendants"); and Kyocera Corporation, Kyocera Wireless Corporation, and Kyocera Sanyo Telecom, Inc. (collectively "Kyocera" or "Kyocera defendants"). That case (*SPH America, LLC v. High Tech Computer Corp. et al,* No. 1:08-cv-702) was assigned to the Honorable Judge Gerald Bruce Lee. SPH America promptly began settlement discussions with all three defendant-groups. During its settlement discussions with the Sony Ericsson defendants, the latter represented under an NDA certain confidential information that led to their voluntary dismissal on September 22, 2008. With the HTC defendants, SPH America entered into a standstill agreement and voluntarily dismissed them on October 17, 2008 in order to further ongoing settlement discussions. Shortly thereafter, on December 18, 2008, SPH America and the HTC defendants entered into a Settlement and License Agreement.[1]

Thereafter, only the Kyocera defendants (represented by Foley) remained in the case. What transpired from this point on is a series of legal battles between Kyocera and SPH America, which appeared to come to an end with a standstill agreement on July 1, 2009. The ensuing settlement discussions, however, led to a further dispute and resulted in the present action. Detailed facts regarding the ensuing litigation between SPH America and Kyocera will be set forth below separately.

While SPH America worked out the standstill agreement with Kyocera – and thus expecting its disputes with Kyocera to wind down – it prepared the next round of the CDMA litigation. On June 25, 2009, SPH America initially filed a complaint against Nokia Corporation,

---

[1] Under this agreement, HTC defendants took a license to the patents asserted in the 1:08-cv-702 case. The specific terms of the agreement are confidential, but can be made available for *in camera* inspection.

- 3 -

and Nokia, Inc. ("Nokia"), and Apple, Inc. ("Apple"), asserting the '385 patent. (*SPH America, LLC v. Nokia Corporation et al*, No. 1:09-cv-701). SPH America dismissed that complaint on July 2, 2009 and filed another complaint on July 6, 2009, naming the same three (and forty-one additional) defendants and asserting three additional patents. (*SPH America, LLC v. Acer, Inc. et al,* No. 1:09-cv-740). SPH America elected to file a new complaint rather than amending the original complaint because it wished to preserve its right to amend as a matter of course (e.g., to add another patent).[2] SPH America's decision to dismiss and re-file had nothing to do with any alleged "judge shopping." SPH America fully addressed defendants' allegations of judge shopping in its Opposition to Motion to Transfer Venue in the 1:09-cv-740 case. (Brief in Support of Opposition (D.I. 165), at 29; Declaration of K. Kevin Mun in Support of Opposition (D.I. 167)). To summarize here, when SPH America filed the complaint on July 6 for the pending 1:09-cv-740 case, it identified on the civil cover sheet that the 1:09-cv-701 case, which had been assigned to Judge Lee, was a "related case," even though that case was no longer pending. (Declaration of K. Kevin Mun in Support of Brief in Response to Order to Show Cause ("Mun Decl."),[3] Ex. A). In fact, SPH America fully expected the new case to be assigned to Judge Lee, as the 1:09-cv-701 case had been.

Since the filing of the complaint, SPH America has agreed to requests for extensions to answer made by all defendants that have been served.[4] A group of defendants then filed a motion to transfer before their answers became due. On August 20, 2009 SPH America dismissed HP Development Company LLC, which it had mistakenly believed to be affiliated

---

[2] In fact, the '973 patent issued on September 8, 2009, and was added to this case via SPH America's amended complaint filed on September 9, 2009.
[3] Attached to this Brief as Exhibit 1.
[4] Eight (which are all foreign) of the remaining forty-one defendants are presently in the process of being served through appropriate international service process.

with Hewlett Packard Co.  On the same day, SPH America also dismissed Franklin Wireless Corp. ("Franklin"), based on specific information it obtained regarding Franklin's business.  On September 9, 2009, the day after the '973 patent issued, SPH America amended its complaint to assert that patent, and to add and dismiss certain defendant entities.[5]  As a result of these changes, the case now involves a total of forty-one defendants and five patents.  None of the dismissals to date had anything to do with the strength of SPH America's claims or its willingness to pursue its claims.

In fact, SPH America is, and has always been, prepared to fully pursue the merits of its claims in this Court.  SPH America's infringement contentions against each defendant, which it is prepared to produce at the Court's direction, will show that its infringement case is strong and applicable industry-wide.  Moreover, SPH America has already seen the crux of the likely defenses – (i) allegations of fraud by ETRI before standards-setting organizations (set out in Kyocera's third party complaint against ETRI (1:08-cv-702 case, D.I. 29) and elsewhere) and (ii) invalidity (set out in Kyocera's requests for reexamination of the '385 and '029 patents) – and believes that they do not affect the merits of its claims.[6]

---

[5] Aside from the two defendants dismissed on August 20, 2009, the amended complaint dropped six and added five defendant entities, to account for corporate name changes or errors and reorganizations.

[6] The Order also identifies prior actions filed in this Court by WiAV Solutions, LLC ("WiAV"), which was also founded by Dr. Choongsoo Park. (Order, at 2, n. 3).  WiAV first filed litigation against defendant-groups Research In Motion ("RIM"), Apple, and Palm, Inc. ("Palm") in Civil Action No. 3:08-cv-485 (filed July 30, 2008) ("485 Case").  Before the case could advance, the patent-owner-of-record Mindspeed Technologies, Inc. ("Mindspeed") raised an ownership issue.  Moreover, WiAV had decided to drop Palm from the litigation.  In order to ensure a clean record, WiAV decided to first resolve the dispute with Mindspeed in a separate action and dismissed the 485 Case.  However, to preserve its rights to pursue its case against the defendants in its chosen forum, WiAV filed a new case, Civil Action No. 3:08-c-627, captioned *WIAV Solutions LLC v. Research In Motion, Ltd., et al.* ("627 Case") on September 26, 2008, naming the RIM and Apple defendants.

B.     **Wireless Handsets Litigation**

SPH America also owns another portfolio of patents, including United States Patent Nos. 6,212,408 ("the '408 patent") and 6,278,887 ("the '887 patent"). The '408 patent relates to wireless handsets that accept voice commands from users. The '887 patent relates to wireless handsets with certain power saving features.

On June 12, 2009, SPH America filed a complaint against the three Kyocera entities asserting these two patents. (*SPH America, LLC v. Kyocera Corp., et al.,* No. 2:09-cv-276). Then, as mentioned above, SPH America and Kyocera entered into a standstill agreement on July 1, 2009, whereby they agreed to cease their pending disputes and enter into good faith settlement discussions. As a result, SPH America dismissed that case on the same day. On July 14, 2009,

---

After favorably resolving its dispute with Mindspeed, WiAV returned to its litigation in this Court, in which no defendants had yet to answer. However, during the interim, WiAV had reached a favorable settlement with one of the two remaining defendant groups, Apple. Thus, WiAV dismissed Apple from the 627 Case. With only RIM remaining in the litigation, WiAV sought the court's leave to dismiss the 627 Case without prejudice and refile a new case naming just RIM (627 Case, D.I. 15). The only reason for doing this was to moot any possible issue as to whether WiAV had standing at the time the complaint was filed. On January 23, 2009, the court granted WiAV's motion (D.I. 18).

WiAV immediately filed Civil Action No. 3:09-cv-47 (filed January 26, 2009) ("047 Case"), naming just RIM. Now, with a clean record of standing, WiAV actively and aggressively pursued its case against RIM. The court issued the scheduling order shortly thereafter. However, before the case could progress further, WiAV reached a favorable settlement with RIM. Thus, the 047 Case was dismissed on June 1, 2009.

With the first litigation over, resulting in favorable results for WiAV, WiAV proceeded with the next litigation. On June 15, 2009, WiAV filed Civil Action No. 3:09-cv-373 ("373 Case") against Kyocera. Although WiAV had every intention of pursuing this case, just as it had with the first litigation, it subsequently dismissed the case on August 3, 2009 as a show of good faith in the hopes of fostering settlement discussions in view of the standstill agreement that Kyocera had entered into with SPH America. WiAV also filed on July 14, 2009, the currently pending Civil Action No. 3:09-cv-447, captioned *WIAV Solutions LLC v. Motorola, Inc., et al* ("447 Case").

SPH America filed the pending 1:09-cv-776 case asserting the same two patents against seventeen defendants. No defendant has yet been served.

Thus, in summary, SPH America's lawsuits before this Court reflect the usual vagaries of complex patent litigation. In each of the dismissed cases, either settlement or anticipated settlement discussions led to a dismissal – entirely reasonable and common-practice. As for the pending cases, SPH America has not shown any less resolve to actively pursue its claims before this Court.

## II.     SPH America's Litigation with Kyocera

Turning back to the 1:08-cv-702 case, after the HTC and Sony Ericsson defendants were dismissed, only Kyocera remained. On November 3, 2008, the Court issued a Scheduling Order (1:08-cv-702, D.I. 80) adopting the parties' proposed discovery plan (D.I. 80-2), which provided that "all documents produced pursuant to this plan … shall be treated by the receiving party as Attorneys-Eyes-Only." *Pursuant to this Scheduling Order*, on November 10, 2008, SPH America produced its infringement contentions, detailing the link between Kyocera's products and specific language and figures from the CDMA2000 1x and EV-DO standards. Meanwhile, Kyocera and SPH America entered into a Confidentiality and Nondisclosure Agreement ("NDA") on October 21, 2008 for the purposes of settlement. Subject to this NDA, Kyocera requested and obtained from SPH America, in January 2009, a list containing other patents in SPH America's portfolio.

On October 27, 2008 (and more than three and a half months after service of the complaint), Kyocera moved to transfer venue to the Southern District of California. During the hearing on November 14, 2008, the Foley attorney for Kyocera repeatedly *represented to the*

*court* that there were *no* material witnesses in Virginia,[7] even though Kyocera had already served a subpoena on the Telecommunications Industry Association ("TIA"), based in Arlington, Virginia, on November 4, 2008, with detailed requests for documents and deposition testimony.[8] (Mun Decl., Ex. B).  The perceived lack of any material witness in Virginia was a critical factor in Judge Lee's decision.  Thus, based in large part on representations by Kyocera's counsel, Judge Lee issued an Order on November 14, 2008 granting Kyocera's Motion to Transfer Venue.

Following the transfer, Foley took certain actions that can only be interpreted as tactics designed to hurt SPH America's licensing business, as they lacked any connection to Kyocera's interest in the lawsuit.  On February 18, 2009, Foley took the list of SPH America's other patents in its portfolio, which SPH America had disclosed explicitly under the October 21, 2008 NDA and upon Kyocera's express request, and used it to file a retaliatory complaint for declaratory relief in the Southern District of California, identifying each patent by its patent number.  (No. 09-cv-0299).  As they knew well, the identity of the specific patents to which SPH America was exclusively licensed was confidential and unavailable from any public record.[9]  Moreover, SPH

---

[7] See Hearing Transcript for Motion to Transfer Venue (1:08-cv-702, D.I. 93): "There is not a single material witness in this district." (5:22-23); "It literally is the fact that all of the material witnesses, all of the material evidence is elsewhere and all of it is either within or significantly closer to the district as to which transfer is – is proposed." (7:11-15); "And so this is an extraordinary case in terms of the absence of a single material witness here … and the fact that all of the witnesses, including all of the crucially important independent witnesses are in the proposed transferee court or far closer to it." (12:3-9).

[8] During the hearing, Mr. Kleinfeld for Kyocera made the *same point* – that SPH America's subpoena served on Qualcomm was "strong evidence" that material witnesses were located in the Southern District of California. (Hearing Transcript for Motion to Transfer Venue, 9:22 – 25).

[9] Kyocera has argued that patent numbers by themselves cannot be confidential information.  However, the confidential information is not just the patent numbers but the fact of SPH America's rights to those specific patents.  Without SPH America's disclosure to Kyocera (made under the NDA) of which patent rights it owned, Kyocera could not have determined this information based on public information – which is evidenced by the fact that Kyocera was not

America explicitly told Eric Klein, Kyocera's in-house attorney, during settlement talks that it would not assert any additional standards-based patents licensed from ETRI.  Thus, Kyocera faced no reasonable risk of lawsuit – as illustrated by SPH America's willingness to grant a covenant not to sue.  The court for the Southern District of California ultimately dismissed the declaratory relief complaint on July 1, 2009, per the parties' standstill agreement.  (09-cv-0299, D.I. 33).  Nevertheless, that complaint disclosed SPH America's confidential patent rights to the world, including all of its potential licensees.  SPH America tried unsuccessfully to seal the information from public view, including asking Kyocera to file a motion to seal.

On March 17, 2009, Foley, on behalf of Kyocera, filed a Motion to Stay the action pending reexamination in the now transferred 1:08-cv-702 case, attaching as exhibits copies (which it falsely alleged to be "true and correct") of the requests for reexamination of the '385 and '029 patents that it had filed with the Patent Office on the prior day.  The motion to stay exhibit containing the '385 reexamination request included SPH America's claim charts from its November 10, 2008 infringement contentions, which should have been treated as "Attorneys-Eyes Only" under the court's Scheduling Order.[10]  Foley had absolutely no legitimate reason to submit SPH America's confidential claim charts in the requests for reexamination.  Reexamination proceedings only consider prior art publications, and informing the Patent Office of SPH America's infringement theory serves no purpose.  In fact, the '385 reexamination

---

able to file its declaratory judgment action until after SPH America disclosed the confidential information.

[10] While the case was still in this Court and the parties were negotiating a protective order, Kyocera insisted on a prosecution bar (without any limit to its temporal scope) against both party's outside counsel with respect to certain patents or patent applications.  At the same time, it appears that the Foley attorneys, who accessed SPH America's infringement contentions and discovery materials, were preparing their own prosecution activities (i.e. requests for reexamination) as to SPH America's patents, and ultimately disclosed those contentions to the public.

request that Foley actually filed on March 16, 2009 did not contain the same SPH America claim charts, even though its transmittal pages listed SPH America's "Infringement Contentions And Accompanying Document Production" as an exhibit.[11]

SPH America believes that these actions were taken with intent to damage and malign SPH America's licensing program. As discussed above, the public disclosure of SPH America's confidential patent rights (in Kyocera's declaratory relief complaint) and claim charts (in Kyocera's motion to stay) served no legitimate litigation purpose. Further, these actions may well have been taken with knowledge that the doctrine of litigation privilege would hamper SPH America's ability to seek an effective remedy.

After Kyocera moved the court in the Southern District of California for a stay and filed the requests for reexamination, SPH America filed an ITC investigation against Kyocera asserting the same '385 and '029 patents (*In the Matter of Certain Wireless Communications Devices and Components Thereof,* Inv. No. 337-TA-675) on March 25, 2009. SPH America also filed the 2:09-cv-276 complaint against Kyocera asserting United States Patent Nos. 6,212,408 ("the '408 patent") and 6,278,887 ("the '877 patent") on June 12, 2009. After the Patent Office rejected Kyocera's initial petition to institute reexamination of the '385 patent, Kyocera and SPH America entered into the July 1, 2009 standstill agreement, whereby the parties would cease litigation and discuss a comprehensive settlement.

However, at the *first settlement meeting* held in San Diego and attended by company representatives from both Kyocera and SPH America, Kyocera made it abundantly clear that it

---

[11] PTO's office communication dated May 27, 2009, which vacated the March 6, 2009 filing date for the '385 reexamination request, noted that "Exhibit 9" (described as SPH America's infringement contentions and accompanying documents in the request transmittal pages) was not actually included in the request papers.

had no intent to enter into even a remotely reasonable settlement. Instead, the Foley attorneys at the meeting disclosed to all attendants (including Kyocera representatives) SPH America's interrogatory response from the ITC investigation. As discovery material subject to the ITC Protective Order, that interrogatory response *should not have been shown* to Kyocera employees without following strict procedures under the ITC rules. Moreover, the Foley attorneys went on to misstate SPH America's infringement position to the Kyocera representatives. These events led to this present lawsuit.

## III.  The Present Action against Foley

The filing of the instant complaint was warranted by Foley's continued disregard of confidentiality obligations, including those under court orders, in its repeated unauthorized disclosures of information designated as confidential by SPH America.[12] The following facts, as set forth in the complaint, are uncontested:

- In January 2009, SPH America disclosed certain of its patent rights to Foley and Foley's client, Kyocera, pursuant to an October 21, 2008 NDA, which rights Foley then disclosed in a declaratory judgment complaint it filed in the Southern District of California on February 18, 2009;[13]

- On November 10, 2008, SPH America produced its preliminary infringement

---

[12] According to ITC Rules, the identity of individuals accused of violating a protective order should be treated as confidential business information, and not disclosed to unauthorized parties, unless and until the ITC determines that a violation has occurred and issues sanctions. 19 CFR §210.34. When SPH America filed the complaint, it was careful not to identify the individual Foley attorneys who *disclosed* SPH America confidential business information. Thus, while SPH America did not believe the complaint needed to be sealed, it determined—out of an abundance of caution—to file a motion to seal the complaint with respect to the Foley attorneys whose names appear in the complaint.

[13] After Kyocera's first unauthorized disclosure of SPH America's confidential information, SPH America filed an action for breach of the NDA, Civil Action No. 3:09-cv-572, captioned *SPH America, LLC v. Kyocera Wireless Corp., et al.* ("the 572 Case"). Despite efforts to find an amicable resolution, Kyocera maintained that it had absolute immunity from suit for its unauthorized disclosure. SPH America decided that it was better served by moving on with its licensing and enforcement program, including the ITC investigation, and dismissed the 572 Case.

- 11 -

claim charts in an Eastern District of Virginia litigation subject to a Discovery Plan (later adopted in the court's Scheduling Order) that required Foley and Kyocera to treat the documents as "Attorneys-Eyes Only," and Foley, on March 17, 2009, included the charts as an attachment in its Motion to Stay the action in the Southern District of California; and

- On June 8, 2009, SPH America served its responses to Kyocera's interrogatories in the ITC investigation—responses marked confidential under the ITC protective order—and which Foley admitted to disclosing to unauthorized Kyocera employees.

In each instance, Foley received information under a duty to keep it confidential, including duties imposed by the ITC's Protective Order (which the individual Foley attorneys agreed to abide by submitting signed consents) and this Court's Scheduling Order in the 1:08-cv-702 case. And in each instance, Foley disclosed the information without first seeking authorization from SPH America or otherwise seeking to declassify the information. Foley's only purported justification for its repeated disclosures is that, in its opinion, the information was not confidential.

SPH America had sufficient cause to file the instant action to redress those violations, and did so after the third such unauthorized disclosure. Also, because Foley continues to be involved in SPH America's ongoing settlement discussions with Kyocera, as well as representing defendants in other litigations brought by SPH America, SPH America is justifiably concerned that Foley would continue this pattern of conduct and make further unauthorized disclosures of its confidential information.

On August 31, 2009, shortly after SPH America filed its complaint in this case, Administrative Law Judge Gildea issued an Order in the ITC investigation declassifying SPH America's interrogatory response. SPH America promptly informed Judge Gildea that it was considering whether to petition the ITC for a review of that order. However, SPH America ultimately decided not to challenge the order, and, on September 17, 2009, the ITC determined

not to review the Order.  Consequently, SPH America then had to evaluate the impact of the Order, and the Commission's determination not to review it, on the instant action.

Additionally, SPH America has made a settlement offer to defendant, requesting only that the specific Foley attorneys who participated in the actions alleged in its complaint have no further involvement in SPH America's lawsuits or attempt to gain further access to its confidential information.  Foley has rejected this offer.  On September 28, 2009, SPH America met with counsel and made the decision at that time to voluntarily dismiss the complaint.  Once that decision was made, SPH America did not delay, but immediately filed the notice of voluntary dismissal under Fed. R. Civ. Pro. 41(A)(1)(a)(i).

SPH America has no present intention to re-file the complaint, either in the Eastern District of Virginia or any other jurisdiction.  It has decided to move on and to focus on the pending patent infringement actions.  However, it still has concerns over Foley's repeated disregard of SPH America's confidential information, and wishes to preserve its rights to seek appropriate remedies (e.g., seeking sanctions and/or a protective order or other measure to enjoin certain Foley attorneys from further accessing SPH America's confidential information) in the event of further attempts by the same Foley attorneys to gain access to SPH America's confidential information.  Therefore, SPH America dismissed its complaint without prejudice before defendant answered or filed any responsive pleading.

Finally, SPH America addresses Your Honor's concern about its denial of Foley's request for an extension for filing an answer.  On September 4, 2009, Christa Anderson, Foley's attorney, sent a letter to Kevin Mun, SPH America's attorney, stating that:

> Foley intends to file a motion to dismiss the case pursuant to Fed. R. Civ. Proc. 12(b)(3) for improper venue or, in the alternative, for transfer of the case pursuant to 28 U.S.C. § 1404 … [and if] the case is not dismissed pursuant to Rule 12(b)(3), Foley also intends to file a subsequent motion to dismiss the case pursuant to Rule 12(b)(6).

That letter further asked that:

> SPH America stipulate that Foley may file its motion to dismiss for improper venue and, in the alternative, to transfer venue no later than September 30, 2009, and that Foley may file any Rule 12(b)(6) motion to dismiss no later than 15 days after a ruling on Foley's motion to dismiss for improper venue/motion to transfer.

(Mun Decl., Ex. C). As is abundantly clear, contrary to the representations by Foley in its Motion to Enlarge Time filed on September 8, 2009 ("Foley's Motion"), Foley did not request a simple 15-day extension of time.

On September 8, 2009, while preparing a response to the above letter, Mr. Mun received a call from Steven Ragland, another attorney for Foley. During the call, Mr. Mun stated to Mr. Ragland that SPH America could not stipulate to Foley's proposed motion schedule outlined in the letter. (Mun Decl., ¶5). Not only were Foley's requests unusual and not in accordance with standard procedure for requesting an extension, the actual enlargement Foley requested was, even assuming the shortest possible motion schedule, in excess of 60 days[14], nothing at all like the 15-day extension requested in Foley's Motion. SPH America has agreed to routine requests for extensions without exception with a number of defendants in its past and pending cases. (See, e.g., No.1:09-cv-740, D.I. 14, 16, 22, 24, 27, 28, 33, 34, 39, 42, 45, etc.).

## IV. Conclusion

SPH America has not filed any vexatious lawsuits. Each decision by SPH America to file or dismiss claims had a reasonable basis, and was made in furtherance of its goal of pursuing the merits of its claims in this Court. Moreover, defendant Foley has not suffered any prejudice, as

---

[14] The calculation is based on the following assumptions: (1) Foley obtains a 15-day extension to file a Rule 12(b)(3) motion or a motion to transfer by September 30, 2009; (2) SPH America files its opposition within the 11-day period (assuming the motion is e-filed), on October 14, 2009; (3) Foley files a reply brief within the 3-day period on October 22, 2009; (4) the Court then decides the motion on October 30, 2009 with or without a hearing; and (5) Foley obtains another 15-day extension to file its Rule 12(b)(6) motion by November 16, 2009.

SPH America dismissed its complaint before it answered the complaint.  Unless Foley engages in further misconduct with respect to SPH America's confidential information, SPH America has no intention of re-filing this complaint in this Court or elsewhere.  Thus, SPH America respectfully requests that it be allowed to dismiss the complaint without prejudice under Fed. R. Civ. Pro. 41(A)(1)(a)(i).


Dated:  October 5, 2009                                    Respectfully submitted,

                                                                               /s/ K. Kevin Mun
                                                                        _____
                                                                        K. Kevin Mun (VA Bar No. 73247)
                                                                        Echelon Law Group, PC
                                                                        1919 Gallows Road, Suite 330
                                                                        Vienna, Virginia 22182
                                                                        Telephone:  (703) 496-5000
                                                                        Fax:  (877) 994-3416
                                                                        E-mail:  kevin.mun@echelaw.com

                                                                        *Attorneys for Plaintiff SPH America, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 5th day of October, 2009, I electronically filed the foregoing PLAINTIFF'S BRIEF IN RESPONSE TO COURT'S ORDER TO SHOW CAUSE and DECLARATION OF K. KEVIN MUN IN SUPPORT OF PLAINTIFF'S BRIEF IN RESPONSE TO ORDER TO SHOW CAUSE with the Clerk of Court using the CM/ECF system.

      And I hereby certify that I caused the foregoing to be mailed to the following non-filing user:

Foley & Lardner LLP
c/o F&L Corp.
777 E Wisconsin Avenue, Suite 3800
Milwaukee , WI 53202-5306


          ___/s/  K. Kevin Mun_____