IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| SPH AMERICA, LLC,<br>a Virginia company,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>FOLEY & LARDNER LLP,<br>a Wisconsin partnership,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　Civil Action No. 1:09-CV-945 LMB/JFA<br>)<br>)<br>)<br>)<br>)<br>) |

## FOLEY & LARDNER LLP'S SUBMISSION RE:
## ORDER TO SHOW CAUSE

### I.　　PREFATORY STATEMENT

On September 28, 2009, Plaintiff SPH America, LLC ("SPH") voluntarily dismissed this action under Fed. R. Civ. P. 41(a)(1)(A)(i). Docket No. 25. The following day, the Court directed SPH to "show cause on Friday October 9, 2009 at 10:00 am as to why this complaint should not be dismissed with prejudice and defendant awarded costs as a prevailing party under 28 U.S.C. § 1920." Docket No. 26 at 3. Defendant Foley & Lardner LLP ("Foley") hereby offers this submission for the Court to consider in conjunction with the Order to Show Cause ("OSC") hearing and any sanctions against SPH and/or its attorneys that the Court may impose.

In its OSC, the Court indicated that it wishes to ensure that Foley "has not been unduly prejudiced" by this lawsuit. Docket No. 26 at 3. Foley appreciates the Court's concern and willingness to consider exercising its *sua sponte* and/or inherent authority, and offers this submission to assist the Court in understanding the depth and extent of SPH's conduct. Foley also recognizes that SPH has dismissed its Complaint against Foley, and nothing herein is an attempt to further litigate that dismissed Complaint. Rather, this information goes to the collateral issue of sanctions for SPH's conduct before this Court.

## II.    INTRODUCTION

Foley shares the Court's concern that SPH is on a campaign of vexatious litigation directed at Foley's clients, and now Foley itself. The record (discussed briefly below) clearly justifies this conclusion. SPH's purpose was and is to attempt to disrupt Foley's attorney-client relationships with Kyocera and ZTE — both adversaries of SPH in patent litigation — and to defame the impeccable reputations of Foley and its lawyers. Frustrated by its inability to achieve any substantive success against Foley's clients in these patent matters, SPH filed its recently dismissed complaint against Foley (the "Complaint") for the sole purpose of generating negative publicity in a misguided effort to harm Foley's client relationships. Further, SPH's Response to the Court's OSC (Docket No. 27) foreshadows additional mischief that SPH intends to make by again recycling its baseless allegations, for the purpose of seeking "sanctions and/or a protective order or other measures to enjoin certain Foley attorneys from further accessing SPH America's confidential information." Docket No. 27 at 13.

SPH's hasty dismissal before Foley even responded to the Complaint demonstrates one truth — SPH had no intention of actually litigating the merits of its baseless claims against Foley. SPH concedes as much at page 13 of its brief: "SPH has no present intention to re-file the complaint . . . ." *Id.* This concession illuminates both SPH's misguided press strategy and its improper purpose for filing this case. After SPH's publicly-filed Complaint received maximum attention from the press — which sensationally repeated SPH's baseless allegations — SPH belatedly sought to seal it to deprive Foley of any public opportunity to respond once the damage from SPH's false allegations had been done. Once the Court rejected that effort, SPH voluntarily dismissed the Complaint a few days before Foley was scheduled to respond. By that voluntary dismissal, SPH sought to avoid the consequences of motions Foley might have brought under Rules 11 and/or 12 of the Federal Rules of Civil Procedure.

Now, in response to the OSC, SPH has provided *no* evidence to establish the supposed merits of its now-dismissed Complaint against Foley. Notably, not a single SPH employee, nor any of its lawyers, was willing to go on the record, under oath, to explain its conduct. Instead, SPH merely repeats its spurious allegations and offers in defense only an unexplained, unverified "decision" not to pursue its lawsuit against Foley — less than 40 days after first filing it. Docket No. 27 at 13. Remarkably, SPH made the same "decision" in April 2009 — under threat of Rule 11 sanctions — shortly after making certain similar allegations against Foley's client, Kyocera, in the Southern District of California. Contrary to its assertions, SPH's pattern of filings and prompt dismissals in no way "further[s] . . [a] goal of pursuing the merits of its claims in this Court." *Id.* at 14. Rather, this history is only consistent with a different purpose: to inflict maximum reputational harm and distraction on Foley in order to obtain improper advantage in separate litigation with Foley's clients.

### III.    LEGAL BASES FOR SANCTIONS

As an initial matter, Foley appreciates (and joins in) the Court's desire to forestall further meritless lawsuits by dismissing the *SPH v. Foley* action with prejudice. The Fourth Circuit, however, has held that a Rule 41(a)(1)(A)(i) dismissal is available to a plaintiff as a matter of unconditional right and is effective upon filing with the clerk. *Marex Titanic, Inc. v. The Wrecked and Abandoned Vessel*, 2 F.3d 544, 546 (4th Cir. 1993). Such a dismissal divests the Court of jurisdiction over the merits of a case, precluding "even a perfunctory order of the court closing the file." *Id*.

Notwithstanding the foregoing authority, the Court *does* retain jurisdiction over both SPH and its attorneys for collateral matters such as imposing sanctions for their conduct before the Court. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393-398 (1990); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 140 (1992) (court may impose sanctions as a collateral issue even where district court lacked subject matter jurisdiction over dispute that gave rise to sanctionable

conduct). Several bases for Court-imposed sanctions may exist here should the Court elect to exercise its authority in that regard.

**A.     This Court Has the Authority to Impose Rule 11 Sanctions *Sua Sponte*.**

Rule 11 of the Federal Rules of Civil Procedure is one basis for the Court to sanction SPH and/or its attorneys. SPH's unilateral dismissal does not prevent the Court from levying Rule 11 sanctions. Indeed, it is well-established that the Court may issue Rule 11 sanctions even after a Rule 41(a)(1) dismissal. *Cooter*, 496 U.S. at 395; *see also Matthews v. Gaither*, 902 F.2d 877, 880 (11th Cir. 1990) ("while a Rule 41(a)(1) notice of dismissal prevents a court from considering the merits of the case, the court still has the authority under Rule 11 to enforce rules of court through sanctions") (cited with approval by *Marex Titanic*); *Marex Titanic,* 2 F.3d at 547 n.6. As the Supreme Court explained, Rule 11 sanctions *are* available after a Rule 41(a)(1) dismissal because, since "the violation of Rule 11 is complete when the [complaint] is filed, a voluntary dismissal does not expunge the Rule 11 violation." *Cooter & Gell*, 496 U.S. at 395. In short, "nothing in the language of Rule 41(a)(1)(i), Rule 11, or other statute or Federal Rule terminates a district court's authority to impose sanctions after such dismissal." *Id*.

Indeed, in *Cooter & Gell*, Justice O'Connor took care to explain that "[b]oth Rule 41(a)(1) and Rule 11 are aimed at curbing abuses of the judicial system, and thus their policies, like their language, are completely compatible." *Id.* at 397. Moreover:

> Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay. Even if the careless litigant quickly dismisses the action, the harm triggering Rule 11's concerns has already occurred. Therefore, a litigant who violates Rule 11 merits sanctions even after a dismissal. Moreover, the imposition of such sanctions on abusive litigants is useful to deter such misconduct. If a litigant could purge his violation of Rule 11 merely by taking a dismissal, he would lose all incentive to stop, think and investigate more carefully before serving and filing papers.

*Id*. at 398 (internal citation omitted).[1]

In instances where the Court is acting *sua sponte* pursuant to Rule 11, the Court has the power to impose non-monetary sanctions or penalties paid into the court. *See* Fed. R. Civ. P. 11(c)(5)(B); *Brickwood Contractors, Inc. v. Datanet Eng'g. Inc.*, 369 F.3d 385, 389 n.2 (4th Cir. 2004); *see also Colida v. Nokia, Inc.*, --- F.3d ---, 2009 WL 3172724 (Fed. Cir. Oct. 6, 2009) (upholding sanction of enjoining further suits by plaintiff after series of meritless suits dismissed). If the Court exercises its *sua sponte* authority under Rule 11, additional proceedings may be necessary. *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002).

**B.     This Court Has Inherent Power Broader Than Rule 11 To Impose Sanctions.**

The Court also may invoke its inherent power to sanction a party or attorney, and this power is broader than that granted under Rule 11. As the Supreme Court affirmed more than a decade ago, "[c]ourts have inherent power to impose sanctions on a party for bad faith conduct that offends the legal process." *Chambers v. NASCO*, 501 U.S. 32, 46 (1991). This inherent power is in addition to, and not displaced by, other specific bases for sanctions such as Rule 11 and 28 U.S.C. § 1927 because "each of the other mechanisms reaches only certain individuals or conduct, [while] the inherent power extends to a full range of litigation abuses." *Id*. Appellate courts pay "substantial deference to the district court in such matters." *In re Evans*, 801 F.2d 703, 706 (4th Cir. 1986).

Courts in this district have invoked their inherent authority where, for example, specific bases for sanctions "reach[ed] a narrower range of conduct" than the offending actions the court desired to punish. *See American Science & Eng'g, Inc. v. Autoclear, LLC*, 606 F. Supp. 2d 617,

---

[1] In 1993, a safe harbor provision was added to Rule 11, requiring a party to wait to file a Rule 11 motion with the Court until 21 days after serving it on the opposing party. *See* Fed. R. Civ. P. 11(c)(2). This 21-day waiting period applies only where a litigant seeks Rule 11 sanctions, not where they are imposed on the Court's own initiative. *Brickwood Contractors, Inc. v. Datanet Eng'g. Inc.*, 369 F.3d 385, 389 n.2 (4th Cir. 2004). The safe-harbor amendment to Rule 11 in no way abrogates this Court's *sua sponte* powers that were the subject of the Supreme Court's decision in *Cooter*. As the Fourth Circuit has explained, "failure to comply with the safe-harbor

623-624 & n.2 (E.D. Va. 2008). Indeed, "district courts have the inherent power to sanction parties for certain bad faith conduct, even where there is no particular procedural rule that affirmatively invests the court with the power to sanction." *Strag v. Bd. of Trustees*, 55 F.3d 943, 955 (4th Cir. 1995).

This broad inherent authority to sanction attorneys and parties permits a court to assess fees and costs, exclude evidence or defenses, punish for contempt, vacate fraudulently-obtained judgments, dismiss actions, and even "conduct investigations as necessary to exercise the power." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993); *see also Carefirst of Md., Inc. v. First Care, P.C.*, 422 F. Supp. 2d 592, 597-600 (4th Cir. 2006) (discussing available sanctions); *Willhite v. Collins*, 459 F.3d 866, 868-869 (8th Cir. 2006) (upholding monetary sanctions imposed pursuant to court's inherent authority, as against attorney who filed multiple previous lawsuits over essentially the same dispute).[2]

The Court also "has the inherent authority to disbar or suspend lawyers from practice" before it. *Evans*, 801 F.2d at 706. Similarly, 28 U.S.C. § 1927 provides the basis to sanction "[a]ny attorney or other person admitted to conduct cases in any court of the United States" for "unreasonably and vexatiously" dragging out or "multiplying" proceedings. 28 U.S.C. § 1927. Persons sanctioned under this statute "may be required to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." *Id.*; *see also Velocity Micro, Inc. v. Edge Interactive Media, Inc.*, 2008 U.S. Dist. LEXIS 90873 (E.D. Va. 2008). A court may impose section 1927 sanctions *sua sponte* as long as it affords the

---

provisions would have no effect on the court's authority to *sua sponte* impose sanctions under Rule 11(c)(1)(B), to award costs pursuant to 28 U.S.C. § 1927, or to impose sanctions within its inherent power." *Id*.

[2] In light of the Fourth Circuit's decision in *Marex Titanic*, 2 F.3d 544, it is unclear if the Court has the authority to impose the sanction of dismissal with prejudice after a voluntary dismissal without prejudice under Rule 41(a)(1)(A)(i).

sanctioned attorney notice and an opportunity to be heard. *Jolly Group Ltd. v. Medline Indust., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).[3]

## IV. RELEVANT FACTUAL BACKGROUND

In light of the Court's authority to sanction SPH and/or its attorneys for their conduct in this matter (particularly in light of other complaints filed by SPH in this Court), Foley offers the following background and context to the *SPH v. Foley* lawsuit. This is not offered in an attempt to reach the merits of the now-dismissed Complaint, but instead to assist the Court in determining what, if any, sanctions are appropriate.

**A.  SPH's Complaint Omitted Critical Facts, Including That Another Court Had Rejected SPH's Allegations in the Now-Dismissed Complaint.**

In SPH's Complaint against Foley, SPH asserted a number of claims premised on the disclosure by Foley of certain allegedly confidential information. What SPH failed to acknowledge — in its Complaint or in its response to the pending Order to Show Cause — is that SPH either has already litigated and lost its claim regarding the alleged confidentiality of the information at issue, or has expressly waived any claim of confidentiality through its conduct in other litigation.

**1.  Judge Dana Sabraw of the Southern District of California previously rejected SPH's claim that the patent numbers in Kyocera's declaratory judgment complaint were confidential.**

SPH has previously litigated, and lost, its claim that Foley somehow disclosed SPH's confidential information by filing a declaratory judgment complaint on behalf of Kycoera. Complaint ¶¶ 11-18. By way of background, Foley has represented various Kyocera entities in patent litigation initiated by SPH since July 2008. SPH first sued Kyocera for patent infringement in the Eastern District of Virginia (the "Patent Infringement Suit"), based on SPH's

---

[3] Although section 1927 does not authorize sanctions against an attorney for filing a single complaint, it may authorize sanctions in this case, in light of SPH's pattern (as noted by the Court in its Order) of filing and dismissing multiple lawsuits. *DeBauche v. Trani*, 191 F.3d 499, 511-12 (4th Cir. 1999).

alleged rights as exclusive licensee of three patents. Complaint ¶ 10. Kyocera, represented by Foley, moved to transfer that case to the Southern District of California, in San Diego, and the case was transferred in November 2008. Complaint ¶ 10; Declaration of Wendy J. Thurm ("Thurm Decl."), Exh. A (Transfer Order). SPH then filed a motion to reconsider in the Virginia district court, followed by a motion in the California district court to re-transfer the case back to Virginia. In both its motion for reconsideration before Judge Lee of this Court, and its motion to retransfer before Judge Sabraw in the Southern District of California, SPH made the same baseless accusation that Foley had misrepresented the location of material witnesses in order to obtain the venue transfer. Thurm Decl., Exh. B at 1 (SPH Mtn. for Reconsideration); *id.*, Exh C (SPH Mtn. to Retransfer). In fact, Foley made no misrepresentations to either court, and both Judge Lee and Judge Sabraw refused to transfer the action back to Virginia despite SPH's accusations. *Id.*, Exh. D (Order Denying Mtn. to Reconsider); *id.*, Exh. E at 3-4 (Order Denying Mtn. to Retransfer).

On February 8, 2009, while the Patent Infringement Suit was pending in federal court in California, Kyocera filed a declaratory judgment action in the Southern District of California against SPH (the "Declaratory Judgment Action"). Kyocera filed the Declaratory Judgment Action in response to SPH's repeated threats to sue Kyocera for infringement of four ***additional*** patents that were not at issue in the pending Patent Infringement Suit. The Declaratory Judgment Action identified four patents, and sought a declaration that each was neither infringed nor valid.[4] Thurm Decl., Exh. F (Kyocera Declaratory Judgment Complaint).

While SPH contended that the patent numbers were its confidential information, it waited for a full month to seek to seal this complaint. Thurm Decl., Exh. G (Declaratory Judgment docket). In that dilatory motion to seal, SPH argued that its status as exclusive licensee of the

---

[4] Foley's clients ultimately dismissed this Declaratory Judgment Action, but only because SPH provided them with a covenant not to sue.

patents was somehow confidential under the scope of an October 2008 Non-Disclosure Agreement between SPH and Kyocera (the "NDA"). The court *denied* SPH's motion to seal, emphasizing that SPH had not shown that its licensee status was a trade secret. *Id.,* Exh. H (Order denying motion to seal). Judge Sabraw explained, "[SPH] claims that the information is confidential, but *there is no suggestion that the information rises to the level of a trade secret*." *Id*. (emphasis added).

Although never mentioned in SPH's recently-dismissed Complaint in this Court, SPH also sued Kyocera in the Southern District of California in March 2009 (the "First Non-Disclosure Suit"). In the First Non-Disclosure Suit, SPH claimed that the filing of Kyocera's Declaratory Judgment Action was a deliberate breach of the NDA and disclosed the same confidential information that SPH sought unsuccessfully to seal. Thurm Decl., Exh. I (First Non-Disclosure Suit Complaint). After Foley sent SPH a Rule 11 letter and motion, on behalf of Kyocera, SPH dismissed the First Non-Disclosure Suit on April 27, 2009, within Rule 11's safe-harbor period. *See id.*, Exh. J (Rule 11 letter and motion); *id.*, Exh. K (notice of dismissal).

Nevertheless, SPH's Complaint against Foley *again* claimed that this information was somehow confidential and alleged that Foley breached the NDA by including it in the Declaratory Judgment Action complaint. Complaint ¶ 16. Nowhere did SPH acknowledge that Judge Sabraw already held this information non-confidential, that SPH made identical allegations (against Kyocera) in its First Non-Disclosure Suit, or that SPH then withdrew them under threat of Rule 11 sanctions. SPH cannot claim that it had a good faith basis for recycling virtually the same allegations in paragraphs 11-18 of the recently dismissed complaint against Foley: SPH was previously on notice that these allegations violated Rule 11, and that Judge Sabraw had rejected its contention that the information in Kyocera's Declaratory Judgment complaint was confidential.

2.  **The Complaint omitted the facts that SPH never marked its infringement contentions confidential and that SPH never objected to the public filing of its purportedly confidential infringement contentions.**

SPH also did not disclose in its Complaint that the supposedly confidential infringement contentions (which are the subject of claims in its now-dismissed Complaint against Foley) were previously publicly-filed in prior litigation with no objection whatsoever from SPH.

Specifically, in an attempt to resolve the protracted litigation by SPH against Kyocera, Foley filed two reexamination requests with the United States Patent and Trademark Office ("PTO") in March 2009, asking the PTO to reject the patents SPH asserted in the Patent Infringement Suit.  Complaint ¶ 24.  The CDMA2000 Standard on which SPH bases its infringement case is actually prior art to certain claims of one of those patents (U.S. Patent No. RE 40,385).  The PTO requires that each item of prior art be supported by a claim chart comparing the elements of the patent to the elements present in the art.  As part of Kyocera's reexamination request, Foley therefore submitted to the PTO SPH's non-confidential infringement contentions (comparing the elements in the patent to the elements in a publicly-available standard).  Foley then filed a motion to stay the Patent Infringement Suit pending the PTO reexaminations.  In support of that motion, Foley submitted a complete copy of the reexamination requests and the infringement contentions included therein.  Complaint ¶ 7.

SPH's recently dismissed Complaint against Foley contended that Foley's reexamination requests improperly included confidential information from SPH's infringement contention charts prepared in the Patent Infringement Suit, and that Foley disclosed SPH's confidential information by attaching a copy of these infringement charts from the Patent Infringement Suit. Complaint ¶¶ 20, 26.  But SPH never alleged in its Complaint that these contentions were marked "confidential."  SPH could not have made any such allegation, because SPH provided the infringement contentions without any confidentiality label or notation or any other marking that would have indicated that SPH believed the contentions were protected from disclosure by

the Rule 16 Joint Conference Report and Proposed Discovery Plan ("Discovery Plan") in the Patent Infringement Suit. In fact, SPH's conduct at the time it provided the infringement contentions to Foley was consistent with the Discovery Plan, which treated as Attorneys' Eyes Only those historical documents in possession of the clients, and not attorney-generated infringement contentions. Thurm Decl., Exh. L (Discovery Plan). SPH's allegations against Foley run counter to the plain meaning of the Discovery Plan, as confirmed by SPH's own conduct under the Plan.

Moreover, SPH *never* sought to seal the motion to stay filed in the Patent Infringement Suit, which (along with the attached infringement contentions) has been part of the public record in that case for months before the Complaint against Foley was filed. Thurm Decl., Exh. M (Patent Infr. Suit Docket). In fact, SPH did not even oppose the motion to stay, and the court granted it in May 2009. *Id.,* Exh. N (Order granting stay). SPH could not have any basis to sue Foley for trade secret misappropriation based on information that was not, and could not be, confidential.

   **3. Contrary to SPH's claims against Foley, the ITC has found that SPH's response to Interrogatory 39 is *not* confidential.**

The ITC has rejected the allegation of SPH's now-dismissed Complaint that its response to Interrogatory No. 39 was confidential. Nine days after Kyocera filed its requests for reexamination with the PTO, SPH filed a (now abandoned) complaint with the United States International Trade Commission ("ITC"), again asserting patent infringement against Kyocera and others. Complaint ¶ 29. SPH's recently dismissed Complaint against Foley alleged that, during a settlement meeting between SPH and Kyocera on July 31, 2009, a Foley presentation improperly disclosed and misrepresented SPH's response to ITC contention interrogatory number 39 to Kyocera employees, who were also in the meeting. Complaint ¶ 34. SPH did not allege, however, that SPH or its counsel objected to Foley's supposedly improper disclosures at

the time. Nor did SPH's Complaint disclose that, at the time of its filing, the ITC was already evaluating the merits of SPH's claims of confidentiality.

In fact, ten days before SPH filed its Complaint, Kyocera (through Foley) filed a post-termination motion with the ITC on August 11, 2009, requesting that the ITC declare SPH's response to Interrogatory No. 39 non-confidential (and non-trade secret) under the ITC's protective order. Only days after SPH's Complaint was filed in this Court, on August 31, 2009, the ITC granted that motion, finding that nothing in SPH's discovery response is in fact confidential or a trade secret. Thurm Decl., Exh. O (ITC Order). Specifically, the ITC concluded as follows:

- "That this [interrogatory] response is a legal contention is not in dispute."

- "Legal arguments generally do not constitute [Confidential Business Information]."

- "Even if such legal arguments were protected [Confidential Business Information], SPH's public treatment of similar legal contentions suggests that SPH never intended to maintain the secrecy of legal contentions relating to industry standards," given its repeated public references to such information.

*Id.* at 6. The ITC Order also rejected SPH's claim (made to the ITC and in its now-dismissed Complaint against Foley) that its response to Interrogatory No. 39 was not a substantive response, but merely an objection to the format of the question. Administrative Law Judge Gildea specifically stated that SPH's claim that its interrogatory response was not substantive "is not credible." *Id.* at 5 n.2. The ITC's Order, therefore, directly contradicts the allegations SPH made against Foley concerning alleged improper disclosure and interpretation of SPH's response to this interrogatory. Complaint at ¶ 33-34, 47. Yet SPH let its Complaint and judicially discredited allegations linger in this Court for an additional 28 days before filing its Rule 41 dismissal.

**B.   SPH Sued Foley in an Effort to Interfere with Its Client Relationships and to Harm Foley Through Foreseeable Press Reports of Its Sensational, But False, Allegations.**

**1.   SPH filed its Complaint in an improper attempt to force Foley to limit its representation of its clients, and then immediately dismissed the case when Foley would not capitulate to its demands.**

SPH filed its Complaint against Foley in this Court on August 21, 2009. At that time, many of the defendants in *SPH America, LLC v. Acer, Inc., et al.*, Case No. 1:09-cv-740-LMB, were required to file responsive pleadings on August 31, 2009. In its Complaint against Foley, SPH asserted baseless claims for misappropriation of trade secrets and breach of contract, premised on the alleged disclosures of confidential information described above, and for three types of interference with contractual relations, premised on Foley's alleged "misrepresentation" of SPH's infringement contentions. In its prayer for relief, SPH sought limitations on Foley's ability to represent clients in litigation against SPH and SPH-related entities. For example, SPH sought injunctive relief precluding Foley's lawyers from accessing any SPH-confidential information.

As evidenced by its voluntary dismissal, SPH was in fact unwilling and unable to pursue these claims for relief. SPH's dismissal is entirely unsurprising, given that its claims against Foley were premised upon (1) alleged disclosures of confidential information that either SPH had taken no measures to protect or which other courts had found ***non-confidential***, and (2) allegations of misrepresentation premised solely on Foley's description to its client, in SPH's presence, of SPH's response to a contention interrogatory.[5]

What is remarkable, however, is SPH's brazen attempt to use the Complaint to extract a settlement that would interfere with Foley's representation of its clients. As SPH disclosed in its

---

[5] SPH's claim of "misrepresentation" is fundamentally flawed on many grounds, most notably the litigation privilege. It is hornbook law that Foley's communications with its client are absolutely protected by this doctrine, and SPH's allegations attempted an extraordinary intrusion into its attorney-client relationship. In fact, even as it continues to malign Foley without cause, SPH's response to the Court's Order to Show Cause reveals knowledge by SPH that its claims lacked merit: SPH itself suggests that "the doctrine of litigation privilege would hamper SPH America's ability to seek an effective remedy" for Foley's alleged misconduct. Docket No. 27 at 10.

Response to the OSC (contrary to the normal confidentiality of settlement discussions), SPH proposed to settle the matter in exchange for an agreement that certain unnamed Foley lawyers would cease representing their clients in litigation adverse to SPH and SPH-related entities. Docket No. 27 at 13. In making this settlement proposal, SPH's lawyers violated Virginia Rule of Professional Conduct 5.6(b), which states: "A lawyer shall not participate in offering or making . . . (b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy, except where such a restriction is approved by a tribunal or a governmental entity." Foley refused to agree to a settlement designed to impair its attorney-client relationships. Faced then with the prospect of having to proceed on its meritless claims, SPH immediately dismissed the claims before any response was due. Docket No. 27 at 13.

Notably, SPH's brief in response to the Order to Show Cause suggests that this is not the last time SPH intends to trot out these baseless allegations to interfere with Foley's representation of its clients. For example, SPH states that it "wishes to preserve its rights to seek appropriate remedies (*e.g.*, seeking sanctions and/or a protective order or other measure to enjoin certain Foley attorneys from further accessing SPH America's confidential information) . . . ." Docket No. 27 at 13. In other words, SPH apparently intends to recycle the dismissed claims in this case as a basis to interfere with Foley's ability to access certain information necessary to represent its other clients in pending or future litigation with SPH (such as Foley's representation of ZTE Corporation in the action entitled *SPH America, LLC v. Acer, Inc., et al.*, Case No. 1:09-cv-740-LMB). Foley would be extremely prejudiced by any further attempt to re-assert the baseless allegations in the recently dismissed Complaint.

### 2. SPH filed its Complaint publicly in an attempt to harm Foley's reputation.

SPH also filed its Complaint publicly, notwithstanding the harm these false allegations would cause to Foley and notwithstanding the ITC Rule precluding public filing of such allegations in the first place.

SPH publicly filed its Complaint in this action on Friday, August 21, 2009. SPH's allegations specifically named three Foley lawyers who represented (and still represent) Kyocera in its litigation against SPH. While SPH now claims that it was "careful not to identify the individual Foley attorneys" who disclosed SPH's allegedly confidential information (*see* Docket No. 27 at 11 n.12), this claim is breathtaking in its falsity. In fact, SPH's Complaint (1) specifically identified three Foley attorneys who participated in the settlement meeting on which SPH's ITC-related claims were based (Complaint ¶ 34); (2) expressly sought injunctive relief against those three attorneys as well as Foley itself (Complaint at 18, Prayer for Relief); and (3) attached in support of its claims individual ITC undertakings by two of those attorneys and several others at Foley (Complaint Exh. 6). In short, SPH's Complaint was designed to cause maximum damage to Foley and to the specific attorneys named, in the public eye, all in derogation of the ITC regulation cited by SPH, 19 C.F.R. § 210.34.

And SPH achieved its improper objective. SPH's baseless but sensational allegations against Foley were soon reported widely on the Internet's legal blogosphere. By the next business day, SPH's allegations were reported in prominent on-line publications such as *The Legal Times*, *The ABA Journal*, *The American Lawyer*, and *Law360*. *See* Docket No. 13 (Foley's Opposition to Motion to Seal). Although SPH made no attempt to seal its Complaint before it was publicly available in the Court's files and widely disseminated via the Internet, it later filed a Motion to Seal. Docket No. 5. If granted, SPH's motion would have deprived Foley of an opportunity to respond publicly to SPH's frivolous allegations.[6] Foley filed a thorough response

---

[6] Ultimately, SPH dismissed its Complaint two days before Foley's response was due, again avoiding a substantive response by Foley. As the Court is aware, Foley's response to SPH's Complaint was originally due on September 15, 2009. Foley moved the Court for a brief extension of time to respond to SPH's Complaint, after SPH refused to grant Foley any extension whatsoever. In its response to the Court's Order to Show Cause, SPH quotes Foley's ***initial*** extension request (Docket No. 27 at 13-14), but misleadingly suggests that the quoted letter was Foley's only request. The declaration of SPH's counsel on this issue fails to advise the Court that in a follow-up call from Foley's counsel, Foley also requested a simple 15-day extension, as a second option, and that SPH's counsel also refused to grant that request — and in fact expressly refused to agree to ***any*** stipulation whatsoever. Declaration of Steven P. Ragland, ¶ 3; Thurm Decl., Exh. P (Anderson letter to Mun). After the Court granted the

to the motion. Docket No. 13. The Court denied SPH's Motion to Seal, stating that SPH had "not established that it w[ould] suffer any significant harm from th[e] Complaint and Exhibit 6 remaining publicly filed," and noting that SPH "has filed several lawsuits in this district and should be fully aware of the immediate public access to complaints and the appropriate procedure for filing matters under seal." Docket No. 22 at 1-2.

## V.   CONCLUSION

Foley appreciates the opportunity to provide the foregoing information to the Court to consider in conjunction with the October 9, 2009 Order to Show Cause hearing. Foley will be available at that hearing to discuss these matters further and to address other issues the Court may wish to consider in its *sua sponte* inquiry into SPH and its attorneys' pattern of litigation conduct in this district.

Dated: October 8, 2009

    Respectfully submitted,

    FOLEY & LARDNER LLP

    By:    */s/ Michael J. Lockerby*
        Michael J. Lockerby

    Michael J. Lockerby (VSB No. 24003)
    FOLEY & LARDNER LLP
    Washington Harbour
    3000 K Street, N.W., Suite 600
    Washington, D.C. 20007-5143
    Telephone:  (202) 945-6079
    Facsimile:  (202) 672-5399
    E-mail:  mlockerby@foley.com

---

extension, Foley's response to SPH's Complaint was due on Wednesday, September 30, 2009. Docket No. 23. SPH filed its voluntary dismissal on September 28, 2009 — two days before Foley's response was due. Docket No. 25.

                KEKER & VAN NEST LLP

                      John W. Keker (CA Bar No. 49092)
                      Wendy J. Thurm (CA Bar No. 163558)
                      Christa M. Anderson (CA Bar No. 184325)
                      Steven P. Ragland (CA Bar No. 221076)
                      (admitted *pro hac vice*)
                      KEKER & VAN NEST LLP
                      710 Sansome Street
                      San Francisco, CA  94111
                      Telephone:   (415) 391-5400
                      Facsimile:    (415) 397-7188
                      E-mail:        jkeker@kvn.com
                      E-mail:        wthurm@kvn.com
                      E-mail:        canderson@kvn.com
                      E-mail:        sragland@kvn.com

                Counsel for Defendant Foley & Lardner LLP

## **CERTIFICATE OF SERVICE**

I hereby certify on October 8, 2009, I electronically filed the foregoing **FOLEY & LARDNER LLP'S SUBMISSION RE: ORDER TO SHOW CAUSE** with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel of record for Plaintiff SPH America LLC:

> K. Kevin Mun, Esq.
>  *(kevin.mun@echelaw.com)*
> ECHELON LAW GROUP PC
> 1919 Gallows Road, Suite 330
> Vienna, Virginia  22182
> (703) 496-5559
> (703) 579-0105 fax

>                         */s/ Michael J. Lockerby*
> Michael J. Lockerby
> FOLEY & LARDNER LLP
> Washington Harbour
> 3000 K Street, N.W., Suite 600
> Washington, D.C.  20007-5143
> (202) 945-6079
> (202) 672-5399 fax
> MLockerby@foley.com
>   Counsel for Foley & Lardner LLP